## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**JANEQUIA PETERSON,**

> **Plaintiff,**

> **v.**                                        **CASE NO:**

**LEE HEALTH SYSTEM INC./LEE HEALTH**

**d/b/a GOLISANO CHILDREN'S HOSPITAL**

**OF SOUTHWEST FLORIDA,**

> **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JANEQUIA PETERSON, (hereinafter "Plaintiff" or "Ms. Peterson"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, LEE HEALTH SYSTEM INC./LEE HEALTH d/b/a GOLISANO CHILDREN'S HOSPITAL OF SOUTHWEST FLORIDA (hereinafter "Defendant," or "Lee Health") and alleges:

## INTRODUCTION

1.     The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on race, hostile work environment based on race, and retaliation in violation of

her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations; 42 U.S.C. § 1981 - Equal rights under the law; and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, created and maintained a hostile work environment, altered the terms, conditions, and privileges of her employment because of her race and retaliated against her in violation of her rights under Title VII, 42 U.S.C. § 1981, and the FCRA.

3.     As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages including, but not limited to loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer the loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.      This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court for the Middle District of Florida, Fort Myers Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Charlotte County, Florida.

## PARTIES

8.      Plaintiff is a 36-year-old Black/African American female.

9.      Plaintiff is a member of a class protected against discrimination

and retaliation based on her race under Title VII, 42 U.S.C. § 1981, and the FCRA.

10. During the period from July 17, 2023, until May 2, 2024, Defendant employed Plaintiff as a Medical Assistant/Medical Associate.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by Title VII, 42 U.S.C. § 1981, and the FCRA.

13. The Defendant, LEE HEALTH SYSTEM INC./LEE HEALTH d/b/a GOLISANO CHILDREN'S HOSPITAL OF SOUTHWEST FLORIDA, is a healthcare system with multiple locations in Florida, including the facility where Plaintiff was employed located at 22655 Bayshore Road Suite 120, Port Charlotte, Florida 33980.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Charlotte County, Florida, and other locations in Florida.

15. At all times material herein, Defendant met, and continues to meet, the definition of "employer" under all applicable federal and state

statutes including, but not limited to, Title VII, 42 U.S.C. § 1981, and the FCRA.

16.     Accordingly, Defendant is liable under Title VII, 42 U.S.C. § 1981, and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17.     Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18.     On December 17, 2024, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, race discrimination, hostile work environment, and retaliation.

19.     On February 17, 2026, the EEOC issued Plaintiff a Notice of Right to Sue in reference to her Charge of Discrimination (EEOC Charge No. 510-2024-09217) against Defendant.

20.     More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore,

Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

21.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

22.    On July 17, 2023, Plaintiff began her employment with Defendant as a Medical Assistant/Medical Associate at the Golisano Children's Hospital Specialty Clinic located at 22655 Bayshore Road Suite 120, Port Charlotte, Florida 33980.

23.    Plaintiff is a Black/African American female. At the time of her employment, Plaintiff was the only Black African American employee and the only Black Medical Assistant working in the office five days a week.

24.    Plaintiff received a $5,000 sign-on bonus as part of her hiring incentive package.

25.    Plaintiff reported directly to Joni DeMerse, a white Caucasian Registered Nurse who served as the Medical Assistant Supervisor.

26.    From the beginning of her employment, Plaintiff was subjected to continuous harassment and discrimination from Morgan Cirillo, a white

Caucasian Medical Assistant who worked in the same office.

27. Early in Plaintiff's employment, she was warned by supervisors and co-workers to "be careful with what I would say or do close to Mrs. Morgan," indicating that management was aware of Morgan Cirillo's problematic behavior toward other employees.

28. Morgan Cirillo made derogatory remarks about Plaintiff, including comments about "how I talk, how I don't know learn anything about being a medical assistant, how I never want to learn anything."

29. Morgan Cirillo stated to Plaintiff "I do not get paid to train, and they took away my training coach opportunity" and "they dont pay me enough to train other MA!" demonstrating her hostility toward training Plaintiff.

30. Morgan Cirillo spread negative comments about Plaintiff's "persona and performing" to other co-workers, creating a hostile work environment.

31. Morgan Cirillo monitored Plaintiff excessively, with Plaintiff observing that "She spend more time monitoring me and what I'm doing than work."

32. Around October 17, 2023, Morgan Cirillo did not receive a lead

medical position "due to rumors and the way she used to talk and treat me," which clearly aggravated Mrs. Morgan's animus towards Plaintiff.

33. Following this incident, Morgan Cirillo's hostile behavior toward Plaintiff escalated significantly.

34. Morgan Cirillo wrote negative comments about Plaintiff in her job journal, documenting false or exaggerated complaints about Plaintiff's work performance.

35. In November 2023, Plaintiff's rotation schedule was changed, and she was often assigned to work with Dr. Pamela Papola. Morgan Cirillo retaliatorily worked very close to Plaintiff every time she was assigned to Dr. Papola, creating an intensely hostile work environment.

36. When working with Dr. Papola, Plaintiff was constantly accused of not doing her duties correctly, primarily when Morgan Cirillo was present to monitor her work.

37. While Plaintiff was on paid time off, Dr. Papola, Morgan Cirillo, and a Customer Service Representative went through Plaintiff's work belongings and made remarks about her being "unprofessional."

38. As a result of this ongoing harassment and discrimination, Plaintiff was constantly isolated and started to be treated differently and

worse than her white co-workers.

39. Plaintiff suffers from ADHD, anxiety, and depression, conditions for which she takes prescribed medication and receives treatment from psychiatrist Dr. Ivan Escobar.

40. Plaintiff disclosed her medication use during pre-employment drug screening as required.

41. Throughout her employment, Plaintiff's medication was altered many times due to personal reasons and to deal with the harassment and discrimination she was experiencing at work.

42. Plaintiff requested time off for medication adjustment and medical treatment and sought workplace accommodations for her ADHD condition.

43. Plaintiff made multiple verbal and written complaints to management about Morgan Cirillo's discriminatory and harassing behavior, including complaints to:

      a.    Melissa Boyer (Pediatric Division Director)

      b.    Danielle Monroe (Office Manager)

      c.    Joni DeMerse (her direct supervisor)

      d.    Steve McEnerney (Human Resources)

44. These complaints were made during the time period from October 2023 through April 2024.

45. Despite Plaintiff's repeated complaints, Defendant failed to take any meaningful corrective action to stop Morgan Cirillo's discriminatory and harassing behavior.

46. Plaintiff's initial 90-day performance review conducted on November 30, 2023, resulted in "DOES NOT FULLY MEET EXPECTATIONS," citing punctuality issues and friction between Plaintiff and other staff members.

47. Defendant granted Plaintiff a 30-day extension period from October 15, 2023, to January 13, 2024, to improve her performance.

48. Plaintiff's extended performance review conducted on March 1, 2024, showed that she had improved to "FULLY MEETS EXPECTATIONS" in all categories, with her manager noting that Peterson "succeeded in completing the 30 day extension and has improved her work performance."

49. Despite this significant improvement in her performance, Plaintiff continued to be subjected to discriminatory treatment and harassment from Morgan Cirillo.

50. In stark contrast to the treatment of Plaintiff, Morgan Cirillo, a

white employee, received multiple disciplinary actions but was allowed to remain employed despite numerous policy violations and performance issues.

51.    Morgan Cirillo received a First Written Reminder on March 8, 2024, followed by a Second Written Reminder for tardiness on April 10, 2024, and a Decision-Making Leave Day on August 26, 2024.

52.    Morgan Cirillo had over 40 instances of tardiness from January through April 2024 and was warned 46 times before being written up, demonstrating Defendant's lenient treatment of white employees.

53.    Morgan Cirillo engaged in numerous violations including disruptive behavior, failure to complete work tasks, inappropriate workplace conduct, doing homework during business hours, raising her voice at clinical supervisor Joni, spreading rumors about Dr. Papola, using inappropriate language, and neglecting patient care duties.

54.    Human Resources confirmed that there were "no disciplinary actions on Peterson's record since hire date," yet she was terminated for a single incident while Morgan Cirillo was allowed to continue working despite multiple serious violations.

55.    Plaintiff observed that "Golisano policy was enforced strictly for

me (black female) and ignored for Morgan C (white female)," demonstrating the disparate treatment based on race.

56.    On April 25-26, 2024, Plaintiff took sick leave for mental health reasons, texting her supervisor "I really can't be around Morgan. It's not fair we bust our behinds everyday and what she doesn't do it falls back on us. It's overwhelming! So I'm going to take a couple days to think about my future at the PC Location."

57.    On May 2, 2024, Plaintiff came to work in street clothes (shorts and shirt) and appeared distressed due to the ongoing hostile work environment.

58.    Plaintiff told supervisor Joni DeMerse "I cant take this anymore and I am going to see my doctor" and left the workplace to seek medical attention.

59.    Plaintiff had contacted supervisors on May 2-3, 2024, requesting time off for self-care due to medication changes related to the stress and anxiety caused by the discriminatory work environment.

60.    Plaintiff showed up at the facility with the intention of speaking with a manager about the discriminatory environment she was experiencing but never got the opportunity to enter the building to have this conversation.

61.    Instead, Plaintiff contacted the Charlotte County Sheriff's Office to request a civil standby while she retrieved her personal belongings, as Defendant had already characterized her separation as "job abandonment," causing Plaintiff concern about further mischaracterization of the situation.

62.    On May 2, 2024, Plaintiff was terminated via phone call by Diladys Jean-Louis for "job abandonment," despite Plaintiff's attempts to communicate with management about her need for time off for medical reasons related to the hostile work environment.

63.    Defendant classified the termination as "job abandonment" in an attempt to prevent Plaintiff from being eligible for unemployment benefits, adding financial hardship to the discrimination she had already endured.

64.    Following her termination, Plaintiff pursued Defendant's Chain of Command grievance process in May 2024, seeking to address the discriminatory treatment and wrongful termination.

65.    Plaintiff's first level appeal to Diladys Jean-Louis was denied on May 20, 2024.

66.    Plaintiff's final level appeal to Melissa Watson-Boyer was denied on May 22, 2024, with Defendant stating "The determination for termination stands."

67.    As a direct result of her termination, Plaintiff was required to repay the $5,000 hiring incentive bonus, causing immediate financial hardship.

68.    Plaintiff was initially denied unemployment benefits due to Defendant's false characterization of her termination as "job abandonment."

69.    After a nine-month fight, a Florida Appeals Referee decision dated February 12, 2025, found that Plaintiff "quit her job for health reasons" and was not disqualified from unemployment benefits, contradicting Defendant's characterization of the termination.

70.    As a result of Defendant's discriminatory actions and wrongful termination, Plaintiff suffered severe financial and personal hardships, including losing her apartment, having her car nearly repossessed, living without utilities, and sleeping in her car.

71.    Plaintiff's mental health severely declined due to the discrimination and its aftermath, resulting in her being "baker acted" in August 2024.

72.    The discrimination and its consequences were so severe that Plaintiff's son had to live with his father during this difficult period.

73.    Plaintiff was unable to secure comparable employment for over

a year, finally obtaining a position as a Medical Assistant at Pediatric Associates in Riverview, Florida, starting August 25, 2025, at $18.75 per hour.

74.    Multiple staff members witnessed the discriminatory treatment of Plaintiff, including Christine Carder, Trenya Brightly, Joni DeMerse, and Danielle Monroe, who provided statements documenting the hostile work environment.

75.    Text message evidence from co-workers Ruth and Jenna further documented Morgan Cirillo's inappropriate behavior and the workplace dynamics that created a hostile environment for Plaintiff.

76.    Dr. Mary Sokolosky, a Cardiologist, was present during discussions regarding Plaintiff's termination, serving as a witness to the events surrounding her dismissal.

77.    Throughout her employment, Plaintiff was treated differently from her white co-workers, subjected to stricter enforcement of policies, and denied the same opportunities for progressive discipline that were afforded to white employees like Morgan Cirillo.

78.    Defendant's discriminatory actions violated its own policies, including Lee Health Policy S09 05 750 (Recruitment and Employment),

which commits to equal opportunity regardless of race, and Lee Health Policy S09 06 178 (Discrimination, Harassment and Retaliation Prevention), which prohibits discrimination and harassment based on protected characteristics including race.

79.    At all times material herein, Defendant knew or should have known that its employees were subjecting Plaintiff to unlawful discrimination, harassment, and retaliation based on her race, yet failed to take prompt and effective remedial action to stop such conduct.

80.    Defendant's actions and inactions created and perpetuated a racially hostile work environment that interfered with Plaintiff's ability to perform her job duties and enjoy the terms, conditions, and privileges of her employment.

## COUNT I
### Race Discrimination in Violation of Title VII
### 42 U.S.C. § 2000e-2

81.    Plaintiff re-alleges paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82.    Plaintiff is a Black/African American female and is a member of a protected class under Title VII.

83.    At all times material, Defendant was Plaintiff's employer within

the meaning of Title VII.

84. Plaintiff was qualified for her position as a Medical Assistant/Medical Associate and performed her job at a satisfactory level.

85. Plaintiff's March 1, 2024 extended performance review reflected that she "FULLY MEETS EXPECTATIONS" in all categories and had improved her work performance.

86. During her employment, Defendant subjected Plaintiff to different terms and conditions of employment than similarly situated white employees.

87. Plaintiff was subjected to heightened scrutiny, excessive monitoring, isolation, and stricter enforcement of workplace policies.

88. Plaintiff was denied the same progressive discipline and leniency afforded to white employee Morgan Cirillo.

89. Morgan Cirillo, a white employee, was retained despite repeated tardiness, numerous disciplinary issues, and other workplace misconduct.

90. Human Resources confirmed there were no disciplinary actions on Plaintiff's record since her hire date, yet Plaintiff's employment was terminated for a single alleged incident.

91. On May 2, 2024, Defendant terminated Plaintiff's employment.

92.    Defendant asserted "job abandonment" as the reason for Plaintiff's termination.

93.    Defendant's stated reason for terminating Plaintiff was false and pretextual.

94.    Defendant terminated Plaintiff because of her race.

95.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, lost earning capacity, emotional distress, humiliation, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, pre- and post-judgment interest, attorneys' fees, taxable costs, and all further relief the Court deems just and proper.

## <u>COUNT II</u>
**Hostile Work Environment Based on Race in Violation of Title VII**
**42 U.S.C. § 2000e-2**

96.    Plaintiff re-alleges paragraphs 1 through 80 of this Complaint as if fully set forth herein.

97.    Plaintiff is a Black/African American female and is a member of a protected class under Title VII.

98.    At all times material, Defendant was Plaintiff's employer within

the meaning of Title VII.

99.   During her employment, Plaintiff was subjected to unwelcome harassment.

100.   The harassment was directed at Plaintiff because of her race.

101.   Plaintiff was the only Black/African American employee and the only Black Medical Assistant working in the office five days a week.

102.   Morgan Cirillo, a white coworker, repeatedly targeted Plaintiff with derogatory comments about how Plaintiff talked, how Plaintiff learned, and Plaintiff's ability to perform as a medical assistant.

103.   Morgan Cirillo refused to train Plaintiff, complained about having to train Plaintiff, spread negative comments about Plaintiff to coworkers, and monitored Plaintiff excessively.

104.   Plaintiff was isolated, treated differently from white coworkers, and subjected to heightened scrutiny in the workplace.

105.   After Morgan Cirillo was denied a lead position in or around October 2023, her hostility toward Plaintiff escalated.

106.   Plaintiff was regularly assigned in circumstances where Morgan Cirillo could continue monitoring and criticizing her work.

107.   While Plaintiff was on paid time off, coworkers and staff went

through Plaintiff's work belongings and made derogatory remarks about Plaintiff being "unprofessional."

108. The harassment was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

109. Plaintiff subjectively perceived the environment as hostile and abusive.

110. A reasonable person in Plaintiff's position would have found the environment hostile and abusive.

111. Defendant knew or should have known about the race-based harassment through Plaintiff's repeated verbal and written complaints to management and Human Resources.

112. Despite that knowledge, Defendant failed to take prompt and effective remedial action reasonably calculated to stop the harassment.

113. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, mental anguish, humiliation, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, pre- and post-

judgment interest, attorneys' fees, taxable costs, and all further relief the Court deems just and proper.

## COUNT III
### Retaliation in Violation of Title VII
### 42 U.S.C. § 2000e-3

114. Plaintiff re-alleges paragraphs 1 through 80 of this Complaint as if fully set forth herein.

115. Plaintiff engaged in protected activity by opposing what she reasonably believed to be race discrimination and race-based harassment in the workplace.

116. Plaintiff made multiple verbal and written complaints to management and Human Resources, including complaints to Melissa Boyer, Danielle Monroe, Joni DeMerse, and Steve McEnerney, from October 2023 through April 2024.

117. Defendant knew about Plaintiff's protected activity.

118. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions.

119. Following Plaintiff's complaints, the scrutiny and hostility directed toward Plaintiff increased.

120. Plaintiff was subjected to increased monitoring, isolation,

retaliatory treatment, and ultimately termination.

121. On May 2, 2024, Defendant terminated Plaintiff's employment.

122. Defendant classified Plaintiff's separation as "job abandonment," despite Plaintiff's communications with supervisors regarding her condition, her need for time off, and her efforts to address the discriminatory environment.

123. Defendant's stated reason for terminating Plaintiff was false and pretextual.

124. There was a causal connection between Plaintiff's protected activity and the adverse actions taken against her.

125. Defendant retaliated against Plaintiff because she complained about race discrimination and race-based harassment.

126. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, lost earning capacity, emotional distress, humiliation, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, pre- and post-judgment interest, attorneys' fees, taxable costs, and all further relief the Court deems just and proper.

## COUNT IV
### Race Discrimination in Violation of 42 U.S.C. § 1981

127.   Plaintiff re-alleges paragraphs 1 through 80 of this Complaint as if fully set forth herein.

128.   Plaintiff is a Black/African American female.

129.   At all times material, Plaintiff had a contractual employment relationship with Defendant.

130.   Section 1981 protects Plaintiff's right to make and enforce contracts without racial discrimination.

131.   Plaintiff was qualified for her position and was performing her duties satisfactorily.

132.   Defendant, acting through its managers, supervisors, and employees, intentionally treated Plaintiff differently because of her race.

133.   Defendant subjected Plaintiff to heightened scrutiny, excessive monitoring, isolation, and stricter policy enforcement than white employees.

134.   Defendant afforded more favorable treatment, including progressive discipline and continued employment, to white employee Morgan Cirillo despite repeated misconduct and disciplinary problems.

135.   Defendant terminated Plaintiff's employment on May 2, 2024.

136. Defendant's stated reason for termination was false and pretextual.

137. But for Plaintiff's race, Defendant would not have subjected Plaintiff to the discriminatory treatment and termination described in this Complaint.

138. Defendant's conduct interfered with Plaintiff's right to make and enforce her employment contract on equal terms with white employees.

139. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, lost earning capacity, emotional distress, humiliation, and other compensatory damages.

140. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages, back pay, front pay or reinstatement, pre- and post-judgment interest, attorneys' fees, taxable costs, and all further relief the Court deems just and proper.

## COUNT V
## Race Discrimination in Violation of the Florida Civil Rights Act
## Fla. Stat. § 760.10

141.   Plaintiff re-alleges paragraphs 22 through 80 of this Complaint as if fully set forth herein.

142.   Plaintiff is a Black/African American female and is a member of a protected class under the FCRA.

143.   At all times material, Defendant was Plaintiff's employer within the meaning of the FCRA.

144.   Plaintiff was qualified for her position and performed her job satisfactorily.

145.   Defendant subjected Plaintiff to different terms and conditions of employment than similarly situated white employees.

146.   Plaintiff was subjected to excessive monitoring, isolation, heightened scrutiny, and stricter enforcement of workplace rules.

147.   Defendant denied Plaintiff the same progressive discipline and leniency afforded to white employee Morgan Cirillo.

148.   Defendant retained Morgan Cirillo despite repeated tardiness, policy violations, and other misconduct.

149.   Defendant terminated Plaintiff's employment on May 2, 2024,

despite the absence of disciplinary action in Plaintiff's personnel record and despite Plaintiff's satisfactory performance.

150.   Defendant's stated reason for Plaintiff's termination was false and pretextual.

151.   Defendant discriminated against Plaintiff because of her race in violation of the FCRA.

152.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, lost earning capacity, emotional distress, humiliation, and other damages recoverable under the FCRA.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, punitive damages as allowed by law, pre- and post-judgment interest, attorneys' fees, taxable costs, and such other relief as the Court deems just and proper.

## COUNT VI
### Hostile Work Environment Based on Race
### in Violation of the Florida Civil Rights Act
### Fla. Stat. § 760.10

153.   Plaintiff re-alleges paragraphs 1 through 80 of this Complaint as if fully set forth herein.

154. Plaintiff is a Black/African American female and is a member of a protected class under the FCRA.

155. At all times material, Defendant was Plaintiff's employer within the meaning of the FCRA.

156. During her employment, Plaintiff was subjected to unwelcome harassment because of her race.

157. Plaintiff was the only Black/African American employee and the only Black Medical Assistant working in the office five days a week.

158. Morgan Cirillo, a white coworker, repeatedly made derogatory comments about Plaintiff's speech, learning, and work performance, refused to train Plaintiff, spread negative remarks about Plaintiff, and monitored Plaintiff excessively.

159. Plaintiff was isolated and treated differently than white coworkers.

160. The harassment escalated over time and interfered with Plaintiff's ability to perform and continue working in the environment.

161. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

162. Plaintiff subjectively perceived the environment to be hostile and abusive.

163. A reasonable person in Plaintiff's position would have found the environment hostile and abusive.

164. Defendant knew or should have known of the hostile work environment through Plaintiff's multiple complaints to management and Human Resources.

165. Defendant failed to take prompt and effective remedial action.

166. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, mental anguish, humiliation, and other damages recoverable under the FCRA.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, pre- and post-judgment interest, attorneys' fees, taxable costs, and all further relief the Court deems just and proper.

## <u>COUNT VII</u>
### Retaliation in Violation of the Florida Civil Rights Act
### Fla. Stat. § 760.10(7)

167. Plaintiff re-alleges paragraphs 1 through 80 of this Complaint as

if fully set forth herein.

168. Plaintiff engaged in protected activity under the FCRA by opposing race discrimination and race-based harassment in the workplace.

169. Plaintiff made multiple verbal and written complaints to management and Human Resources, including complaints to Melissa Boyer, Danielle Monroe, Joni DeMerse, and Steve McEnerney, from October 2023 through April 2024.

170. Defendant knew about Plaintiff's protected activity.

171. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions.

172. Defendant increased its scrutiny of Plaintiff, allowed the hostility directed toward Plaintiff to intensify, isolated Plaintiff, and terminated Plaintiff's employment.

173. On May 2, 2024, Defendant terminated Plaintiff's employment.

174. Defendant's asserted reason for termination was false and pretextual.

175. There was a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

176. Defendant retaliated against Plaintiff because she complained

about race discrimination and race-based harassment.

177. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, lost earning capacity, emotional distress, humiliation, and other damages recoverable under the FCRA.

**WHEREFORE,** Plaintiff demands judgment against Defendant for back pay, front pay or reinstatement, compensatory damages, pre- and post-judgment interest, attorneys' fees, taxable costs, and all further relief the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 1st day of April 2026.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com
